IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA A. JUBEC, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-831 |
| ) | Chief Judge Donetta W. Ambrose |
| JOANNE B. BARNHART, ) | Magistrate Judge Lisa Pupo Lenihan |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

I.   Recommendation

It is respectfully recommended that the Plaintiff's Motion for Summary Judgment be denied, that the Defendant's Motion for Summary Judgment be granted, and that the decision of the Commissioner of Social Security to deny Plaintiff's application for Supplemental Security Income ("SSI") be affirmed.

II.   Report

Presently before the Court for disposition are cross motions for summary judgment.

A. Procedural History

On June 17, 2005, Pamela A. Jubec ("Plaintiff"), by her counsel, timely filed a complaint pursuant to the Social Security Act, as amended (the "Act"), 42 U.S.C. §405(g), for review of the Commissioner's final determination disallowing her claim for SSI under the Act. The procedural history in this matter, and Plaintiff's prior related matter, is as follows:

Plaintiff's earlier claim for Disability Income Benefits ("DIB") was denied at the hearing level on June 29, 2003 and affirmed by this Court in March, 2005. Absent further appeal, the determination that Plaintiff was not disabled prior to June 30, 2003 is judicially final. See 20 C.F.R. § 404.947(c)(1). Because her insured status, for purposes of DIB, had expired at the end of 2002, Plaintiff was unable to file a subsequent application for DIB; she therefore filed an application for SSI in July, 2003.[1]

Plaintiff's alleged disabilities include obsessive-compulsive disorder, social anxiety disorder, depression, and lower back and neck pain resulting from a recreational bowling injury.[2] Following an administrative hearing on July 7, 2004, at which Plaintiff was represented by counsel and testimony was received from a vocational expert, the Administrative Law Judge (the "ALJ") found that Plaintiff retained the ability to perform a limited range of light work, including

---

1. Although Plaintiff's application alleged disability since January 30, 2003, as noted above, it has already been determined that her impairments through June 29, 2003 did not warrant a finding of disability within the meaning of the Act. Moreover, a claimant cannot receive SSI benefits for a period before which she filed her application. See 20 C.F.R. § 416.335.

2. Plaintiff has also been receiving long-term treatment at methadone clinics for addictions to pain relief medications and perhaps illegal narcotics. Compare R. at 141 (reporting heroin use since 1999 to methadone treatment facility in September, 2002) to R. at 147 (denying any history of illegal drug use to psychologist in August, 2003). It is her testimony that she became addicted following a 1989 automobile accident.

representative jobs identified by the Vocational Expert (the "VE"), and accordingly denied her application. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act, as the evidence did not establish the degree of functional limitation needed to meet or equal the requirements of a disabling condition as set forth in the Act. See Decision of the ALJ ("Decision"), R. at 19-20. The ALJ further concluded that the medical record did not support a finding that Plaintiff could not perform any light work. See id. at 20-21. The Appeals Counsel denied Plaintiff's request for reconsideration and this appeal timely followed.

Plaintiff's pleading in support of her Motion for Summary Judgment asserts that the ALJ erred in determining that Plaintiff's alleged mental impairments do not meet the requirements of the Listing for Affective Disorders, Anxiety-Related Disorders and/or Personality Disorders. See Brief in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Brief") at 12. Plaintiff further alleges that the ALJ erred in failing to adequately articulate his reasons for finding Plaintiff's testimony less than fully credible and/or for inappropriately considering her testimony regarding her residual functioning by reference to her testimony of activities of daily living. See id. at 12-16. Plaintiff relatedly complains that the ALJ failed to "sufficiently take into account [Plaintiff's] mental health conditions", id. at 17, and overstepped his authority in "minimiz[ing]" them, id. at 15. Finally, Plaintiff alleges that the ALJ erred in failing to appropriately consider the effect of Plaintiff's twice-weekly treatment at a methadone clinic on her ability to perform substantial gainful employment.

B.  Statement of Facts

Plaintiff was born in September 1969 and was thus 34 years old at the time of the Decision.[3]  She has completed high school and ten months of business school and has intermittent past relevant work experience as a secretary and/or office manager at various business and facilities.  Plaintiff resides with her six year old daughter, for whom she is the care-giver, in a townhouse and subsists on public welfare benefits.  She has been unemployed since the pregnancy resulting in the birth of her daughter in 1998.[4]

Plaintiff's testimony is that she is unable to work or to retain a job because of lower back and neck pain[5] and mental health difficulties, including obsessive-compulsive disorder and social phobia.  See R. at 194-200.  She also recounts a series of more minor complaints.

Plaintiff's medical records indicate that in August, 2003, Dr. Carosso performed a psychological evaluation from which he concluded that Plaintiff had (1) "marked" limitations in performing detailed tasks and (2) "slight" and "moderate" limitations in some areas of psychological, social and occupational functioning, including understanding and memory, social interactions, and responses to pressures and changes in routine.  Approximately one month later, a state agency psychological consultant, Dr. Milke, performed a mental residual functional capacity assessment which also revealed some "moderate limitations" in some areas of

---

3. Plaintiff is therefore considered a "younger person" under the Commissioner's regulations. See 20 C.F.R. § 416.963(b).

4. See R. at 147  (informing psychologist that she left her 1997 job when she became pregnant).

5. Plaintiff was involved in a 1989 motor vehicle accident and sustained a bowling injury in 1998.  See R. at 15.  She was diagnosed with degenerative disk disease, and underwent a microdiskectomy in February, 1999; the medical records reflect nothing other than a minor surgical procedure and uneventful recovery.

functioning, but none so severe as to preclude her from meeting the basic mental demands of routine work on a sustained basis. See R. at 160-62.

At that same time, *i.e.*, September, 2003, Dr. Wong performed a consultative physical examination, including review of Plaintiff's complaints of chronic lower back pain and leg problems.[6] Dr. Wong found normal sensations and pulses and noted that he had little by way of objective measurements to substantiate Plaintiff's complaints of pain and lifting and walking disabilities. See R. at 154. He noted, nonetheless, that Plaintiff was restricted to lifting/carrying ten pounds occasionally, standing/walking one hour or less, and sitting six hours or less in an eight-hour day, together with unlimited push/pulling and occasional bending, kneeling, stooping, balancing and climbing. See R. at 156-57.

In addition, the records suggest that Plaintiff has not been compliant with her recommended addiction treatment. The records from her methadone treatment facility, Addiction Specialists, Inc., indicate that at her initial counseling session in September 2002, Plaintiff was instructed to schedule 2-1/2 hours of counseling each month and to attend group meetings four times a week. Subsequent records indicate, however, that Plaintiff saw her counselor, Tessa, only five times in 21 months thereafter (*i.e.*, June 23, 2003; February 19, 2004; May 21, 2004; June 20, 2004 and June 24, 2004).[7] Plaintiff has also acknowledged that she has

---

6. Plaintiff describes Dr. Wong as her family doctor, but relates that he has not done much for her. See R. at 195. See also R. at 17 (Decision of ALJ observing that there is little reference to Plaintiff's medical history in Dr. Wong's treatment records and they do not reflect receipt or requirement of any regular medical treatment for back or leg pain); R. at 30 (Prior Decision of ALJ obseving that Dr. Wong suggested Plaintiff lose weight and recommended a back brace, but did not order any objective tests or make any referrals).

7. The instances of Plaintiff's compliance appear to bear some relationship to the administrative
(continued...)

not attended group meetings. In May, 2004, Plaintiff reported to her counselor that she had been delinquent in attendance because she was busy with her daughter's birthday party plans, PTA meetings, cheerleading and Girl Scout meetings.  See R. at 184.[8]

At Plaintiff's hearing before the ALJ, the vocational expert testified that Plaintiff was capable of employment limited to simple, routine and unskilled positions with minimal social contact in sedentary or light work.

C. "Substantial Evidence" Standard of Review

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain her burden of demonstrating that she was disabled within the meaning of the Social Security Act. 42 U.S.C. § 405(g).  See also, e.g., Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala,  40  F.3d 43  (3d Cir. 1994).

 More specifically, 42 U.S.C. Section 405(g) provides:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.

---

7. (...continued)
hearing on her second application for Social Security benefits, i.e., July 7, 2004.

8. Cf. R. at 190-212 (testifying that Plaintiff has difficulty driving, but acknowledging that she drives as necessary to, e.g., the grocery store, her methadone treatment facility, the school busy stop and her daughter's school).

1000) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).  Although there may be contradictory evidence in the record, and/or although this Court may have found otherwise, it is not cause for remand or reversal of the Commissioner's decision if substantial support exists.  Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).

D.  Disability Evaluation

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not entitled to SSI within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

The requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence  . . . 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. Section 423(d)(3).[9]

Finally, the applicable regulations set forth a more explicit five-step evaluation to determine disability.  The regulations, published at 20 C.F.R. §§404.1501-1529, set forth an orderly and logical sequential process for evaluating all disability claims.[10]  In this sequence, the ALJ must first decide whether the plaintiff is engaging in substantial gainful activity.  If not, then the severity of the plaintiff's impairment must be considered.  If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether she can

---

9. In reviewing a disability claim, the Commissioner must consider subjective symptoms as well as the medical and vocational evidence.  See Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984) (explaining that "subjective complaints of pain [should] be seriously considered, even where not fully confirmed by objective medical evidence"); Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971) ("Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.").

In assessing a plaintiff's subjective complaints, the ALJ may properly consider them in light of the other evidence of record, including objective medical evidence, plaintiff's other testimony, and plaintiff's description of his daily activities.  See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  And so long as a plaintiff's subjective complaints have been properly addressed, the ALJ's decisions in that regard are subject only to the substantial evidence review discussed in Section C, supra.  See  Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975) (discussing Bittel and concluding that where  "plaintiff did not satisfy the fact finder in this regard, so long as proper criteria were used, [it] is not for us to question"); see also Kephart v. Richardson, 505 F.2d 1085, 1089 (3d Cir. 1976) (noting that credibility determinations of ALJ are entitled to deference).

10. This evaluation process has been repeatedly reiterated with approval by the United States Supreme Court.  See, e.g., Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003).

do her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file, to assess whether the plaintiff has the ability to perform other work existing in the national economy in light of plaintiff's age, education and past work experience.

While these statutory provisions may be regarded as harsh; nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that Plaintiff was not disabled within the meaning of the Social Security Act.

E. Analysis

As an initial matter, to be eligible for SSI, a plaintiff has the burden of establishing that she has a qualifyingly-severe, medically-determinable impairment. See 42 U.S.C. § 405(g). See also Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). And a finding of disability is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e).

Although the opinion of a treating physician is entitled to increasingly enhanced weight when it is both supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence of record,[11] it is not binding on the ALJ

---

11. See 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). See also Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (holding that ALJ may afford physician's opinions more or less weight depending on the extent to which they are supported); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (noting that doctor's opinions unsupported by objective medical evidence is "weak evidence at best"). Cf. 20 C.F.R. § 404.1529(c)(3) (explaining that objective medical evidence is that obtained from the application of medically acceptable clinical and laboratory diagnostic
(continued...)

on the issues of the nature and severity of a claimant's impairment. See 20 C.F.R. § 404.1527(d)(2). Ultimately, Plaintiff's testimony and her treating physicians' conclusions reiterating that testimony cannot establish disability without objective evidence. See 20 C.F.R. § 404.1529(a) (requiring that claimant provide evidence of medical signs and laboratory findings revealing a medical impairment reasonably expected to produce her symptoms).[12]

In this case, the ALJ determined that the limited evidence provided in the medical records was simply insufficient to support Plaintiff's assertions that she is unable to engage in any substantial gainful employment as a result of her impairments. The ALJ was within his discretion to so conclude. See 20 C.F.R. § 404.1512(a) (requiring claimant to "furnish medical and other evidence that [Agency] can use to reach conclusions about [claimant's] medical impairments and . . . ability to work on a sustained basis"). And so long as his Decision was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion", it may not be overturned. See Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1000) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

More particularly, Plaintiff has failed to cite to any medical evidence demonstrating that she meets the Listing of Impairments' requirements. To the contrary, the records explicitly reflect that Plaintiff's mental health evaluations were of "moderate" impairment and such evaluations

---

11. (...continued)
techniques, such as evidence of sensory deficits or motor disruption).

12. See Decision, R. at 18 (according little weight to Dr. Wong's September, 2003 statements of Plaintiff's work limitations, as they were "not supported by objective clinical findings or the totality of evidence"); see also discussion of Dr. Wong's records, *supra* at 5.

did not indicate that she met the requisite "B" or "C" criteria under the Listings.  See 20 C.F.R. §§ 416.925-27 (providing that determination of whether particular psychological condition meets or equals requirements of a listed impairment is a medical judgment and may be made by the Commissioner's designated psychologists and consultative medical specialists); Records of Dr. Milke, discussed *supra*.  The ALJ fully explained his findings in this regard.  See R. at 14-16.

Similarly, the ALJ fully and appropriately explained the basis for his conclusions regarding Plaintiffs' subjective complaints.  For example, as he explained, the social activities which Plaintiff reported to her methadone treatment counselor diminished the credibility of her testimony that she was socially withdrawn and had severe difficulty functioning around others.  See R. at 16 ("Treatment notes indicate that [Plaintiff's] world revolves around her daughter.  She is busy through the day with activities related to her child, including PTA meetings, cheerleading and girl scouts.").[13]  Moreover, the ALJ also looked to, *e.g.*, the objective medical evidence and the relative absence of ongoing medical and psychological treatment, in assessing the weight to accord Plaintiff's testimony.  See R. at 15-16;  20 C.F.R. § 416.929(c)(3)(v).[14]

In sum, the Decision indicates that all of the evidence provided by Plaintiff was considered by the ALJ and he evaluated it as a whole.  Nothing in the records Plaintiff brings to

---

13.  See also R. at 30-31 (Prior Decision identifying numerous inconsistencies between Plaintiff's allegations of physical and mental impairments and her medical records and daily activities); id. (finding Plaintiff's testimony not credible).

14.  Plaintiff's limited attendance at methadone counseling sessions not only supports the ALJ's evaluation of her subjective testimony but also moots her assertion that he inappropriately failed to consider the effect of a far more rigorous course of therapy on her ability to retain employment.

this Court's attention calls the ALJ's decision into question under the applicable "substantial evidence" standard of review.

III.  Conclusion

For the reasons discussed above, the Commissioner's conclusion is supported by substantial evidence.  For these reasons, it is recommended that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Motion for Summary Judgment be granted, and that the decision of the Commissioner be affirmed.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, within ten (10) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

Dated: March 14, 2006

cc:  Hon. Donetta W. Ambrose
     Chief Judge, United States District Court

     All Counsel of Record